IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-466-FL

| | |
|---|---|
| SADIE PATE WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

In this action, plaintiff Sadie Pate Watson ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 35, 40). Both parties filed a memorandum in support of their respective motions (D.E. 36, 41), and plaintiff filed a separate response (D.E. 43) to the Commissioner's motion. For the reasons set forth below, the Commissioner's motion will be allowed, plaintiff's motion denied, and the Commissioner's final decision affirmed.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 9 March 2009 alleging a disability onset date of 2 June 2006. Transcript of Proceedings ("Tr.") 13. Her application was denied initially and again upon reconsideration, and a request for hearing was timely filed. Tr. 13, 54-57, 64-72. On 13 January 2011, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 24-51. The ALJ issued a decision denying plaintiff's claim on 11 February 2011. Tr. 13-23. Plaintiff timely

requested review by the Appeals Council. Tr. 116-19. The Appeals Council denied the request for review on 1 July 2011. Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 2 September 2011, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)).

### B.     Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A person is under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* (d)(2)(A).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

## C.    Findings of the ALJ

Plaintiff was 48 years old on the alleged onset date of disability and 53 years old on the date of the administrative hearing. *See* Tr. 21 ¶ 7; 28. She has a high school education and past work as a cloth grader, personal care attendant, and office cleaner. Tr. 21 ¶¶ 6, 8.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity from her alleged

3

disability onset date of 2 June 2006 through her last date insured, 30 June 2010 ("relevant period"). Tr. 13; 15 ¶ 2. At step two, the ALJ found that plaintiff has the following medically determinable impairments that are severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): hypertension, osteoarthritis, depression, and anxiety. Tr. 15 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 15 ¶ 4.

The ALJ determined that plaintiff had the RFC to perform a limited range of light work,[1] subject to having the option to alternate between sitting and standing every 45 minutes and not more than frequent interaction with the public, co-workers, or supervisors. Tr. 17 ¶ 5. At step four, the ALJ found plaintiff not capable of performing her past relevant work as a cloth grader, personal care attendant, and office cleaner. Tr. 21 ¶ 6.

At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including back pad inspector, bander, or clip/pen fastener. Tr. 21-22 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled during the relevant period. Tr. 22 ¶ 11.

## II.    DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v.*

---

[1] For the definition of light work, *see* 20 C.F.R. § 404.1567(b); *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work." The DOT is available at http://www.oalj.dol.gov/libdot.htm (last visited 11 Sep. 2012).

*Perales*, 402 U.S. 389, 390, 401 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992. In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## B.    Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed based on his purported failure to adequately consider her obesity and to properly evaluate her credibility. Each ground is examined in turn below.[2]

## C.    Consideration of Plaintiff's Obesity

Social Security Ruling 02-1p, 2000 WL 628049 (12 Sep. 2012) addresses obesity. A person may be deemed obese if his Body Mass Index ("BMI"), a ratio of height to weight,[3] is 30.0 or greater. *Id.* at *2 ¶ 1. While obesity is itself an impairment, it can also increase the severity of coexisting impairments, including osteoarthritis, hypertension, and depression. *Id.* at *3 ¶ 2; *5 ¶ 7. The extent to which obesity imposes functional limitations on a claimant, either alone or in combination with other impairments, is based on an individualized assessment of the case record and is not assumed. *Id.* at *4 ¶ 6; *6 ¶ 7. There is no separate listing for obesity. *Id.* at *1, *5 ¶ 7. The ALJ must consider a claimant's obesity at every step of the sequential analysis after step one. *Id.* at *3 ¶ 3.

It is undisputed that during the relevant period plaintiff was obese, as the record clearly shows. (*See* Pl.'s Mem. 7-8; Comm.'s Mem., *e.g.*, 10, 11). Multiple records place her BMI well above 30.0, either expressly or by providing her height and weight from which her BMI can be calculated. (*See* Pl.'s Mem. 7); Tr. 199 (stating height of 61 3/4 in. and weight of 214 lbs. equaling a BMI of 39.45), 263 (giving height of 62 in. and weight of 212 lbs. equaling a BMI of

---

[2] Other arguments made by plaintiff are subsumed in those addressed below or do not otherwise merit separate discussion.

[3] BMI equals the ratio of an individual's weight in kilograms to the square of his height in meters, or the ratio of an individual's weight in pounds times 703 to the square of his height in inches. Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *2 (citing *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults* (NIH Publication No. 98-4083, September 1998) (metric system calculation of BMI)); *Weight Control Information Network: Body Mass Index, National Institutes of Health,* http://www.win.niddk.nih.gov/publications/tools.htm#bodymassindex (last visited 11 Sep. 2012) (American system calculation of BMI).

38.86), 434-35 (stating BMI of 40.69 based on height of 60 in. and weight of 207.6 lbs.), 439-40 (stating BMI of 41.20 based on height of 60 in. and weight of 214.8 lbs.), 444-45 (stating BMI of 41.20 based on height of 60 in. and weight of 210.2 lbs.). In addition, numerous medical records also expressly diagnose or otherwise refer to plaintiff as obese. Tr., *e.g.*, 200, 256, 273, 306, 347, 354, 358, 361, 364, 367, 370, 376.

Plaintiff argues that the ALJ erred by not finding plaintiff's obesity to be a severe impairment at step two of the sequential analysis and purportedly failing to consider it at each subsequent step of the analysis. The court disagrees.

Plaintiff points to no evidence showing that plaintiff's obesity qualified as a severe impairment—namely, that it had more than a minimal impact on her ability to work. *See Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) ("[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); *see also* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). To the contrary, plaintiff concedes that "none of the physicians treating her physical impairments offered any opinion about . . . the effect of her obesity on her functioning capacity" and that "none of the examining physicians who referenced the claimant's obesity—either by diagnosis or by a reporting of height and weight—rendered an opinion on her residual functional capacity or her ability to work." (Pl.'s Resp. Mem. 4, 5). The absence of medical evidence showing that plaintiff's obesity imposes functional limitations on her ability to work provides sufficient support for the ALJ's nonseverity finding.

Even if it is assumed, however, that the ALJ erred by not finding plaintiff's obesity to be severe at step two, the error would be harmless if, contrary to plaintiff's allegations, he considered it at the subsequent steps of the sequential analysis. *See, e.g., Taylor v. Astrue,* No. 7:11CV162-FL, 2012 WL 3637254, at \*4 (E.D.N.C. 1 Aug. 2012) (mag. judge rept. and recommendation), *aff'd and adopted*, 2012 WL 3636923 (22 Aug. 2012); *Martinez v. Astrue,* No. 1:11-850-CMC-SVH, 2012 WL 3580675, at \*10 (D.S.C. 30 Jul. 2012) (mag. judge rept. and recommendation), *aff'd and adopted*, 2012 WL 3582799 (17 Aug. 2012); *Murray v. Astrue,* No. 1:12cv08, 2012 WL 3730675, at \*20 (N.D. W. Va. 27 Jul. 2012) (mag. judge rept. and recommendation), *aff'd and adopted*, 2012 WL 3727128 (28 Aug. 2012). The court finds that the ALJ did consider plaintiff's obesity at steps three through five (as well as at step two).

The most basic reason is that the ALJ said expressly that he did. He stated as part of his step three analysis:

There are no Listing of Impairments criteria for obesity. However, the Administrative Law Judge has considered the impact of obesity, as discussed in Social Security Ruling 02-01 p, at each step of the sequential evaluation process.

Tr. 16 ¶ 4. Notably, as indicated, the ALJ included in this statement an express reference to the Soc. Sec. Ruling 02-1p, confirming his awareness of his obligation to consider obesity and the standards for doing so.

Moreover, in his decision, the ALJ expressly referred to the findings of obesity made by state agency consultative examining physician Satish K. Kumar, M.D. and state agency consultative examining psychologist Gary H. Bachara, Ph.D. in their evaluations of plaintiff. Tr. 18 ¶ 5; 19 ¶ 5. In addition, the RFC the ALJ found plaintiff to have includes limitations relating to two severe impairments that can be aggravated by obesity, namely, her osteoarthritis and depression. Specifically, as indicated, the ALJ found that she needed to alternate between sitting

and standing every 45 minutes and to have no more than frequent interaction with the public, co-workers, or supervisors. Plaintiff points to no evidence showing that these limitations would not accommodate any impairing effect her obesity may have. Indeed, the absence of evidence that plaintiff's obesity had an impairing effect on her would arguably have precluded remand, even if the ALJ had not considered it as required by Soc. Sec. Ruling 02-1p. *See, e.g., Callicoatt v. Astrue*, 296 Fed. Appx. 700, 702 (10th Cir. 2008); *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005); *Cranfield v. Comm'r of Social Security*, 79 Fed. Appx. 852, 857 (6th Cir. 2003).

As evidence that the ALJ did not consider her obesity, plaintiff cites the ALJ's lack of discussion of it after step two aside from his references to it in summarizing Dr. Kumar's and Dr. Bachara's evaluations. But that statement asserts that the ALJ had considered obesity at every subsequent step. There accordingly was no need for the ALJ to reiterate at each subsequent step that he considered plaintiff's obesity. Moreover, the lack of evidence regarding any limitations imposed on plaintiff by her obesity attenuated the amount of discussion it merited. Thus, the lack of discussion of obesity by the ALJ after step two does not show that he failed to consider it at the subsequent steps.

The court concludes that the ALJ considered plaintiff's obesity in accordance with Soc. Sec. Ruling 02-1p. The ALJ's treatment of the issue of plaintiff's obesity otherwise conforms to applicable legal standards and is supported by substantial evidence. The court accordingly rejects plaintiff's challenge to it.

**D. Determination of Plaintiff's Credibility**

Plaintiff contends that the ALJ did not properly evaluate the credibility of her allegations of disabling limitations arising from her impairments. Based on a careful review of the ALJ's decision and the evidence of record, the court finds that the ALJ committed no error.

9

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.* at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "'specific reasons'" for that finding that are "'supported by the evidence.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)); *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms).

Here, after reviewing comprehensively the medical evidence, plaintiff's hearing testimony,[4] and other evidence of record, the ALJ made the step-one finding that plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." Tr. 20 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not entirely credible. Tr. 45 ¶ 5. The ALJ stated specifically that

---

[4] The ALJ summarized plaintiff's testimony as follows:

> The claimant arrived at the hearing using a single-point cane and was walking very slowly. Her representative emphasized the claimant's impairments include high blood pressure, arthritis in her right leg, severe headaches, and depression--with depression being her most severe problem. According to her testimony, the claimant has received treatment for depression and anxiety attacks. In describing her symptoms, the claimant testified she does not like to be around people, she does not get along with others, and she sometimes "goes off" on her husband. She added that she worries and cries a lot, has difficulty concentrating, has a hard time sitting long enough to watch television, does not visit others, and becomes short of breath when she has panic attacks. Turning to her physical impairments, the claimant testified she has arthritis in her right knee and has [been] treated with an orthopedist for one year. She stated she has received injections that ease the pain for 3 to 4 weeks. The claimant also endorsed using a cane, mostly when she goes out, for example, to the grocery store. Overall, the claimant alleged she is only capable of standing 10 to 15 minutes, walking 1 to 2 blocks before becoming short of breath, and sitting for short periods. She further alleged having medication side effects of dizziness and sleepiness; having chest pains; and having headaches th[at] occur every other day and last 45 minutes. The claimant did admit she helped take care of her young grandchildren (ages 3 and 5) on the weekends.

Tr. 17-18 ¶ 5.

"the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 20 ¶ 5.

The ALJ provided numerous specific reasons for his credibility determination. Tr. 20 ¶ 5. He explained that while plaintiff described her activities of daily living as limited, two factors weighed against regarding this testimony as strong evidence that she was disabled:

> First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.

Tr. 20 ¶ 5.

As an additional reason for his credibility determination, the ALJ noted that plaintiff has not received the type of medical treatment that would be expected for a disabled person. Tr. 20 ¶ 5. Specifically, he cited to "significant gaps in the claimant's history of treatment," including "significant periods of time since the alleged onset date during which the claimant has not taken any medications for those symptoms;" the "essentially routine and conservative" nature of the treatment plaintiff has received; and the absence of medical records corroborating plaintiff's claims of side effects from medications. Tr. 20 ¶ 5.

The ALJ further explained that "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." Tr. 20 ¶ 5. Lastly, the ALJ noted that "the claimant is apparently able to care for young children at home, which can be quite demanding both physically and emotionally, without any particular assistance." Tr. 20 ¶ 5.

Plaintiff does not challenge the latter two grounds given by the ALJ for his credibility determination. Substantial evidence supports them. Specifically, the ALJ's statement regarding the absence of opinions by treating and examining physicians supporting her allegation of disabling impairments appears to be accurate. *See, e.g.*, 197-200 (Dr. Kumar's report), 213 (Dr. Bachara's opinion that plaintiff could perform simple repetitive tasks), 256 (opinion of state agency consultative examining psychiatrist Carol M. Gibbs, M.D. that plaintiff could perform simple repetitive tasks with limitations). Plaintiff herself testified that she helps take care of her two grandchildren, ages three and five, on the weekends, and she had previously reported to Dr. Gibbs that she took care of them during the day when her son, who was then living with her, was working. Tr. 45, 255.

With respect to plaintiff's testimony about her activities of daily living, she argues that lack of objective verification is not a valid basis for rejecting it because under that theory "all such testimony would be summarily rejected." (Pl.'s Mem. 12). But the ALJ did not simply disregard this testimony for lack of objective verification, as plaintiff suggests, but instead considered the lack of such verification as one factor in evaluating its veracity. It is certainly appropriate for an ALJ to seek corroboration of a claimant's testimony regarding the claimant's activities of daily living given the incentive to minimize the ability to perform them without limitation. And objective corroboration would arguably be preferable to corroboration by other persons.

Here, the ALJ actually did consider potentially corroborating evidence regarding plaintiff's testimony about her activities of daily living and otherwise—namely, a third-party

function report by a friend.[5]  Tr. Tr. 20-21 ¶ 5; 169-76.  He gave specific reasons supported by substantial evidence why he did not find that it corroborated her allegations of disability, but stated that he nonetheless considered it in formulating plaintiff's RFC.  Tr. 20-21 ¶ 5.

Plaintiff also argues that the ALJ improperly required objective evidence of pain in finding that her claimed activities of daily living cannot adequately be explained by her medical condition.  This is just one instance of plaintiff's general contention that the ALJ improperly required objective evidence of pain.  But an ALJ is required to consider the extent to which a claimant's allegations of limitations "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(c)(4); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, *5.  Substantial evidence supports the ALJ's finding that plaintiff's condition, as documented in the medical records, does not fully account for the limitations in activities of daily living she alleges.  Moreover, the ALJ expressly relied on evidence other than objective evidence when he found that plaintiff's care for her grandchildren helped discredit her allegations.  As the discussion herein of the other portions of the ALJ's credibility determination shows, the ALJ did not otherwise require objective evidence of plaintiff's pain in his credibility analysis.

Plaintiff further argues that in making his finding regarding plaintiff's activities of daily living the ALJ considered only plaintiff's physical impairments and not her purportedly more disabling mental impairments.  This contention is belied by the ALJ's references to and analysis of plaintiff's mental impairments throughout his decision.  Tr., *e.g.*, 15 ¶ 3; 16 ¶ 4; 17 ¶ 5; 19 ¶ 5.  As discussed, he found her to have severe mental impairments and included limitations in the RFC determination responsive to these impairments.  Tr. 15 ¶ 3; 17 ¶ 5.  In his summary of

---

[5] The ALJ erroneously stated that plaintiff's husband completed the report.  Tr. 20-21 ¶ 5.  Plaintiff does not complain of this error, and it appears harmless, particularly since the points raised by the ALJ regarding the report would appear to remain applicable even when recognizing plaintiff's friend as the person completing it.

plaintiff's testimony, he acknowledged that she claimed "depression [as] being her most severe problem." Tr. 17 ¶ 5.

It appears that when the ALJ speaks of plaintiff's "medical condition" as not fully accounting for plaintiff's alleged limitations, plaintiff may be interpreting that term to include only physical impairments.[6] But the term "medical" encompasses both physical and mental attributes. *See, e.g.*, 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence . . . ."); 1513(a)(2) (defining "acceptable medical sources" to include licensed certified psychologists), (b)(2) (defining "medical reports" to include results of mental status examinations). In light of the ALJ's manifest attention to plaintiff's mental impairments, among other considerations, there is no valid basis upon which to interpret his use of "medical condition" to be limited to plaintiff's physical condition.

Plaintiff also challenges one of the grounds for the ALJ's finding that she did not receive the type of treatment one would expect for a disabled person—namely, that there were gaps in her treatment. Plaintiff does not expressly dispute the other two grounds for the ALJ's finding that her treatment is not indicative of her being disabled as alleged—that her treatment has been routine and conservative in nature and that the medical records do not substantiate the medication side effects she claims—and substantial evidence supports these grounds.

Plaintiff first argues that the ALJ's finding on gaps in treatment is erroneous because a person with plaintiff's mental limitations and purportedly low intelligence level could not reasonably be expected to obtain treatment on a consistent basis. But in the case of

---

[6] In her memorandum in response to the Commissioner's motion, plaintiff erroneously states that "[a]n RFC finding is primarily a physical capability determination." (Pl.'s Resp. Mem. 7). A claimant's RFC, of course, is the most the claimant can still do despite all his work-related limitations, both physical and mental. 20 C.F.R. § 404.1545(a)(1), (4); (b); (c).

psychotherapy, the ALJ actually found that "[t]he claimant regularly participated in therapy sessions." Tr. 19 ¶ 5. Plaintiff does not challenge this finding.

Indeed, notwithstanding her contention that she lacked the ability to obtain treatment regularly, plaintiff denies that there were any significant gaps in treatment and includes as an exhibit to her supporting memorandum a chronological listing of her treatment dates (D.E. 36-3) purportedly showing the absence of any gaps. However, as the ALJ noted, the treatment records in this case begin as of August 2009, over three years after plaintiff's alleged onset date of 2 June 2006. *See* Tr. 20 ¶ 5; 263-67. Plaintiff's treatment for her orthopedic condition—osteoarthritis in her right knee—did not begin until 27 January 2010. Tr. 407. After a follow-up visit on 24 February 2010 (Tr. 406), there are only two subsequent orthopedic visits of record: one, on 10 June 2010, three months later, and the other, on 6 January 2011, about seven months after the June visit. Tr. 405, 457. While the ALJ found that plaintiff obtained psychotherapy regularly, the treatment documented in the record did not begin until January 2010. *See* Tr. 395-401; 450-55. The court concludes that substantial evidence supports the ALJ's finding regarding gaps in plaintiff's treatment.

Plaintiff also argues that the ALJ erred in not mentioning plaintiff's work history in his credibility analysis because a long work history like plaintiff's can bolster the claimant's credibility. It is true, of course, that a claimant's "prior work record and efforts to work" must be considered among all the other evidence of record in determining a claimant's credibility. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *5. It is apparent, though, from the ALJ's discussion of plaintiff's past relevant work that he was familiar with and considered her work history. *See* Tr. 21 ¶ 6. The court accordingly rejects this challenge to the ALJ's credibility determination.

Notwithstanding plaintiff's contentions, the ALJ's RFC determination does reflect the physical and, as mentioned, mental limitations about which plaintiff complained. Specifically, the limitation of plaintiff to light work with a sit/stand option every 45 minutes is responsive to plaintiff's orthopedic impairments. *See* Tr. 17 ¶ 5. The limitation of her to only frequent interaction with the public, co-workers, and supervisors is responsive to her complaints of mental impairments. *See* Tr. 17 ¶ 5.

For all of these reasons, plaintiff's challenge to the ALJ's credibility determination is based on the proper legal standards and supported by substantial evidence. The court therefore rejects plaintiff's challenge to it.

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Commissioner's motion for judgment on the pleadings (D.E. 40) is ALLOWED, plaintiff's motion for judgment on the pleadings (D.E. 35) is DENIED, and the final decision of the Commissioner is AFFIRMED.

This, the $\underline{12}$ day of September 2012.

LOUISE W. FLANAGAN
United States District Judge

Case 5:11-cv-00466-FL   Document 45   Filed 09/12/12   Page 16 of 16